UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Dennis R. Simpson II

    v.                                     Civil No. 07-cv-265-SM

William Wrenn, Commissioner,
New Hampshire Department of
Corrections, et al.[1]

**O R D E R**

Before the Court is Dennis Simpson's complaint (document nos. 1, 3, 7 & 9),[2] filed pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA"). Simpson, an inmate at the Northern New Hampshire Correctional Facility ("NCF"), alleges that the defendants, employees of the New Hampshire Department of Corrections ("NHDOC"), have violated his federal constitutional

---

[1] In addition to William Wrenn, Simpson has named Northern New Hampshire Correctional Facility Warden Larry Blaisdell and Programs Administrator Sue Young as defendants to this action.

[2] On August 22, 2007, Simpson filed a document titled "Complaint" (document no. 1) which had no narrative content, and simply stated the nature of the intended claim. On that date, Simpson also filed an Emergency Motion for Preliminary Injunction (document no. 3), which contained narrative facts relating to the underlying claim. Since that time, Simpson has filed two additional narrative pleadings (document nos. 7 & 9). The allegations contained in all four of these documents will be construed as the complaint in this matter for all purposes. Simpson's request for preliminary injunction will be addressed in a separately issued Report and Recommendation issued simultaneously with this Order.

and statutory right to freely exercise his religion.  The complaint is before me for preliminary review to determine whether, among other things, it states a claim upon which relief might be granted.  See 28 U.S.C. § 1915A; United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).  As explained below, I direct that this action proceed against defendants.

Plaintiff has also filed a motion seeking the appointment of counsel (document no. 4).  For the reasons stated herein, that motion is denied.

## Standard of Review

Under this Court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review.  LR 4.3(d)(2).  In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded.  See Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that

if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." See Castro v. United States, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). All of the factual assertions made by a pro se plaintiff and inferences reasonably drawn therefrom must be accepted as true. See id. This review ensures that pro se pleadings are given fair and meaningful consideration.

## Background

Dennis Simpson is an inmate at the NCF, where he has been since March 1, 2007. Simpson is a practicing Muslim. During his stay at the NCF, Simpson has worked with the NCF chaplain in order to assist in assuring the availability and proper use of religious services for the Muslim inmates. At the time of his arrival at the NCF, Muslim inmates were allowed to hold orthodox Islamic services twice a week, Islamic studies once a week, and Salatal Jumma'ah every Friday. Salatal Jumma'ah is an obligatory religious service that, unlike prayer or study sessions, cannot

be made up if missed, and must be performed in congregation with other Muslims.

The Muslim inmates at NCF did not have a volunteer Imam, or Muslim clergyperson, from the community to regularly attend these services. Simpson reports that there was no institutional difficulty created by any of the Muslim services or study sessions. Simpson also states that his work with the chaplain included addressing any concerns that NCF administrators or staff might have concerning the practice of Islam at the NCF.

On August 1, 2007, NHDOC Commissioner William Wrenn issued a new Policy and Procedure Directive 5.36 ("PPD 5.36") which stated: "Inmates may not meet or gather independent of the direct supervision of appropriate staff or volunteer." PPD 5.36 was to take effect on September 1, 2007. The terms of PPD 5.36 would have the effect of prohibiting the existing NCF Muslim groups from meeting, as they meet without direct supervision of a staff member or volunteer. In addition to regular Muslim services and study groups, PPD 5.36 affects the celebration of Ramadhan and Eid Ul-Fitr, important Muslim holidays celebrated in congregation. On August 6, 2007, NCF Warden Larry Blaisdell effected the policy at the NCF, and Sue Young, the NCF Programs

Administrator, issued written notice of the new policy which was distributed throughout the facility.

## Discussion[3]

I. <u>Section 1983 Claims</u>

Section 1983 creates a cause of action against those who, acting under color of State law, violate federal constitutional or statutory law.  <u>See</u> 42 U.S.C. § 1983[4]; <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981) (<u>overruled on other grounds by</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 330–331 (1986)); <u>Wilson v. Town of Mendon</u>, 294 F.3d 1, 6 (1st Cir. 2002).  In order for a defendant to be held liable under § 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 692 (1978); <u>Soto v.</u>

---

[3] The claim as identified herein will be considered for all purposes to be the claim raised in the complaint.  If Simpson disagrees with this identification of the claim, he must do so by properly moving to amend his complaint.

[4] 42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

5

Flores, 103 F.3d 1056, 1061-62 (1st Cir.), cert. denied, 522 U.S. 819 (1997).  Because Simpson's claims allege violations of federal constitutional and statutory law by state actors, this matter arises under § 1983.

    A.    The First Amendment's Free Exercise Clause

The First Amendment's religion clauses provide that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const. amend. I.  The first clause, the Establishment Clause, mandates the separation of church and state.  The second clause, the Free Exercise Clause, requires that government respect and not interfere with the religious beliefs and practices of those protected by the United States Constitution.  See Cutter v. Wilkinson, 544 U.S. 709, 719 (2005).

A prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974); see also Bell v. Wolfish, 441 U.S. 520, 545 (1979) ("prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison.").  The retained rights include the right

to the free exercise of religion.  Cruz v. Beto, 405 U.S. 319, 322 (1972).  Prisons must provide all inmates reasonable opportunities to exercise their religious freedom.  Id. at 322, n.2.  When a prisoner raises a Free Exercise Clause claim, he must "establish that a challenged policy restricts the inmate's free exercise of a sincerely held religious belief."  Brown-El v. Harris, 26 F.3d 68, 69 (8th Cir. 1994); Barnett v. Comm'r, N.H. Dep't of Corr., No. Civ. 98-305-JD, 2000 WL 1499490 at *2 (D.N.H. Apr. 26, 2000).

   The Supreme Court has held that a prisoner's sincerely held religious beliefs must yield, however, if contrary to prison regulations that are "reasonably related to legitimate penological interests."  Turner v. Safley, 482 U.S. 78, 89 (1987); see O'Lone v. Estate of Shabazz, 482 U.S. 342, 351-352 (1987) (finding that the Constitution does not require the prison to sacrifice legitimate penological objectives to satisfy an inmate's desire to exercise his religion so long as an inmate is not deprived of all forms of religious exercise).  A prison regulation must have a logical connection to the legitimate governmental interests invoked to justify it.  Turner, 482 U.S. at 89-90.  That connection may not be "so remote as to render the

policy arbitrary or irrational." Id.  Prisons must provide all inmates reasonable opportunities to exercise their religious freedom.  See Cruz, 405 U.S. at 322 n.2.  Free exercise claims brought by prisoners are "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights."  Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003) (quoting O'Lone, 482 U.S. at 349); see also Shaw v. Murphy, 532 U.S. 223, 227-229 (2001).

Simpson alleges that the defendants' implementation of PPD 5.36 denies him access to religious services, study sessions, and celebrations that are central to the practice of his sincerely held Muslim faith.  Simpson further alleges that prior to the defendants' implementation of PPD 5.36, the Muslim inmates at the NCF successfully held services and study sessions without direct supervision, and that no problems resulted from these meetings.  The facts, as alleged in the complaint, do not give rise to an inference that the regulation in question furthers a legitimate penological objective.  Accordingly, I find that Simpson has alleged sufficient facts to state a claim for the denial of his First Amendment right to freely exercise his religion.

### B. The Religious Land Use and Institutionalized Persons Act

Simpson's allegation that he was denied access to religious services can also be construed as a claim brought under the RLUIPA which, in certain circumstances, prohibits government infringement on the practice of religion.  See Mayweathers v. Newland, 314 F.3d 1062, 1065 (9th Cir. 2002).  Under the RLUIPA, governmental imposition of a "substantial burden on the religious exercise" of a prisoner is prohibited, unless the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1(a). The phrase "religious exercise" is to be construed liberally to include belief and professing of one's faith as well as the performance of physical acts, such as assembling with others to worship.  See Cutter v. Wilkinson, 544 U.S. 709, 720 (2005).

The complaint alleges that the defendants have substantially burdened Simpson's religious practice by denying him adequate congregational religious services and study sessions.  Again, the facts in the complaint do not give rise to a finding that PPD 5.36 furthers a compelling governmental interest or is the least

restrictive means of furthering that interest.  Accordingly, Simpson's allegations suffice to state a claim under the RLUIPA.

II.   Motion to Appoint Counsel (Document No. 4)

Simpson has requested that the Court appoint counsel in this matter.  There is no absolute constitutional right to free legal representation in a civil case.  Bemis v. Kelley, 857 F.2d 14, 15 (1st Cir. 1988).  Rather, appointment of counsel in a civil case is left to the discretion of the court.  See 28 U.S.C. § 1915(d). An indigent litigant must demonstrate that exceptional circumstances exist to justify appointment of counsel, such that without counsel the litigant most likely would be unable to obtain due process of the law.  DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991); Cookish v. Cunningham, 787 F.2d 1, 2 (1st Cir. 1986) (per curiam).  In the case at hand, Simpson has failed to establish the existence of such circumstances at this time. Simpson's motion for counsel is therefore denied without prejudice to refiling in the future should circumstances warrant.[5]

---

[5]One of the assertions made by Simpson in support of his request for appointed counsel is that he is representing other Muslim inmates as well as himself.  Parties to a federal lawsuit cannot be represented by anyone other than themselves or a member of the bar.  See 28 U.S.C. § 1654; see also LR 83.2(d) ("Persons who are not members of the bar . . . will be allowed to appear

Conclusion

Without commenting on the merits of the complaint, I find that plaintiff has stated claims upon which relief may be granted for violations of his rights under the First Amendment and the RLUIPA.  Accordingly, I order that the complaint (document nos. 1, 3, 7 & 9) be served on Defendants.  The Clerk's office is directed to serve the New Hampshire Office of the Attorney General ("AG"), as provided in the Agreement On Acceptance Of Service, copies of this order, the Report and Recommendation issued this date, the complaint (document no. 1, 3, 7 & 9), and the motion for preliminary injunctive relief (document no. 4). See LR 4.3(d)(2)(C).  Within thirty days from receipt of these materials, the AG will submit to the court an Acceptance of Service notice specifying those defendants who have authorized the AG's office to receive service on their behalf.  When the Acceptance of Service is filed, service will be deemed made on the last day of the thirty-day period.

---

before this court only on their own behalf."); LR 83.6(b) ("Pro se parties must appear personally . . . . A pro se party may not authorize another person who is not a member of the bar of this court to appear on his or her behalf.").  For that reason, Simpson, proceeding pro se and not as a member of the bar of this Court, cannot represent anyone but himself in this action.  I will construe this complaint as filed solely by plaintiff on his own behalf.

As to those defendants who do not authorize the AG's office to receive service on their behalf or whom the AG declines to represent, the AG shall, within thirty days from receipt of the aforementioned materials, provide a separate list of the last known addresses of such defendants.  The Clerk's office is instructed to complete service on these individuals by sending to them, by certified mail, return receipt requested, copies of these same documents.

Defendants are instructed to answer or otherwise plead within twenty days of acceptance of service.  See Fed. R. Civ. P. 12(a)(1)(A).

Plaintiff is instructed that all future pleadings, written motions, notices, or similar papers shall be served directly on the Defendants by delivering or mailing the materials to them or their attorneys, pursuant to Fed. R. Civ. P. 5(b).

**SO ORDERED.**

/s/ James R. Muirhead
James R. Muirhead
United States Magistrate Judge

Date:   January 31, 2008

cc:     Dennis R. Simpson II